# JAMES C. MORROW *vs.* THOMAS L. STANLEY.

*Mortgages: record title; assignments of record, and unrecorded assignments; priority. Notes secured by mortgages.*

By Chapter 392 of the Act of 1892, as amended (Article 66, section 25 of the Code of Public Laws, 1912), the title of all promissory notes, etc., and debts that are contracted, secured by mortgage, both before and after maturity, is conclusively presumed to be vested in the holder of the record title to the mortgage. p. 599

Since the passage of that Act, the title of a *bona fide* assignee of the holder of the record title to such a mortgage is no longer affected by prior unrecorded assignments. p. 599

Since the title is presumed to be in such an assignee of record, it carries with it the presumption that the mortgage debt belongs to him also, and one taking such an assignment of the mortgage can not, in general, be charged with notice of any prior unrecorded assignment. p. 599

The short form of assignment of a mortgage authorized by section 34 of Article 21 of the Code of 1912, may be written on the mortgage record, or may be endorsed on the original mortgage. p. 600

An assignment made upon a valid consideration, without actual notice of any other claims, and accepted in good faith, can not be affected by any prior unrecorded mortgage. p. 600

*Decided February 12th, 1913.*

Appeal from the Circuit Court for Cecil County, in Equity (HOPPER and ADKINS, JJ.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Washington Bowie, Jr.,* and *Stephen W. Gambrill,* for the appellant.

*L. Wethered Barroll* and *William S. Evans* (with whom was *Hope H. Barroll,* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

Benjamin C. Pearce, of Cecil county, Maryland, died in September, 1895, leaving a last will and testament by which he directed his executor, John S. Wirt, of Elkton, Maryland, to invest his entire estate and to pay over the income therefrom to the testator's widow during her life. After the death of his widow, the testator gave his estate to his three children, "to be equally divided among them." The will was duly admitted to probate and letters testamentary were granted to said executor by the Orphans' Court of Cecil County on the 2nd of October, 1895.

On the 7th of December, 1895, Thomas L. Stanley, of Cecil county, executed to John S. Wirt a mortgage of his farm in said county to secure the payment of the sum of $2,500.00, which the mortgage recites was then "owing from the said mortgagor to the said mortgagee," and the mortgage was recorded on the day it was executed. It was not given

to secure a note or bond, but contained a covenant on the part of the mortgagor to pay said sum of $2,500.00 on the 7th of December, 1896, and the interest thereon semi-annually.

On the 10th of December, 1895, John S. Wirt obtained from the Orphans' Court of Cecil County an order authorizing him to invest $2,500.00 of the funds in his hands as executor of Benjamin C. Pearce "in a first mortgage upon the farm of Thomas L. Stanley, in Cecil county," and on the 2nd of January, 1896, he endorsed on the original mortgage from Stanley to him the following assignment:

"For value received I hereby assign the within mortgage to John S. Wirt, executor of Benjamin C. Pearce.

Witness my hand and seal this second day of January, 1896.       JOHN S. WIRT. (Seal)"

*Witness*—J. P. McCay.

This assignment was never recorded. Thomas L. Stanley paid to Mr. Wirt the interest on the mortgage to 1900, and $500.00 on account of the principal of the mortgage debt. In November, 1900, Mr. Wirt sold some bank stocks belonging to his client, Laura C. Barroll, and invested the proceeds in said mortgage. The assignment of the mortgage to Miss Barroll, which was written by Mr. Wirt on the mortgage record, below the mortgage, and witnessed by W. G. Purnell, deputy clerk, is as follows:

"In consideration of the sum of two thousand dollars, I hereby assign the above mortgage to Laura C. Barroll. Witness my hand and seal this 19th day of November, 1900. JOHN S. WIRT (Seal). Witness: W. G. PURNELL, *Deputy Clerk.*"

On the 20th of November, 1900, Mr. Wirt wrote Miss Barroll the following letter, inclosing a certified copy of the mortgage and assignment to her:

"ELKTON, MD., Nov. 20, 1900.

*"Miss Laura C. Barroll,*
       *Elkton, Md.*

MY DEAR MISS LAURA—

I enclose herewith mortgage of Thomas L. Stanley for $2,500.00, which in consideration of the sum of $2,000. the amount due thereon has been assigned to, you.

I also inclose the Insurance Policy which has been marked to your use.

This is a first mortgage upon the property, and I think Stanley will be in the future, as he has been in the past, a prompt interest payer.

When the interest is paid next month I will deduct out of it the interest on the mortgage up until yesterday for myself and will remit you the balance. After that you will receive the interest every six months on the amount of $2,000.

I have not yet heard from Lowndes & Redwood returning me the certificate for the balance of shares due you, but will probably receive a letter from them tonight or in the morning, and when I do I will send you the certificate with the balance of the shares of stock belonging to you.

           Yours very truly,

              JOHN S. WIRT."

After said assignment Mr. Wirt collected the interest on the mortgage for Miss Barroll,.sending her a check for same less his commissions, and signed the receipts therefor as attorney for Laura C. Barroll. He died in May, 1904, leaving a will, and letters of administration with the will annexed were granted by the Orphans' Court of Cecil County to George R. Ash, who found the original mortgage from Stanley to Wirt, with the assignment of January 2nd, 1896, endorsed thereon, in Mr. Wirt's safe inclosed in an envelope marked "Pearce Estate." Laura C. Barroll died in March, 1905, leaving a will, and letters testamentary were granted by the Orphans'

Court of Cecil County to Sarah Ellen Barroll. On the 19th of June, 1905, Thomas L. Stanley borrowed from Isabel R. Steel the sum of $3,000.00 and executed to her a mortgage of his said farm in Cecil county to secure the payment thereof. With the sum so borrowed he paid Sarah Ellen Barroll, executrix, the amount due on the mortgage assigned to Laura C. Barroll, and the mortgage was released by said executrix.

On the 6th of June, 1905, the Circuit Court for Cecil County, sitting as a Court of Equity, passed a decree assuming jurisdiction of the trust estate created by the will of Benjamin C. Pearce and appointing James C. Morrow trustee to execute said trust, with directions to sue for and recover the property belonging to said trust estate, and on the 25th of January, 1906, said trustee filed his bill of complaint in this case against Thomas L. Stanley, Sarah Ellen Barroll, executrix of Laura C. Barroll, Isabel R. Steel and George R. Ash, administrator, etc., of John S. Wirt, setting out the facts we have stated above and alleging that the estate of John S. Wirt was insolvent; that the sum of $2,500.00 loaned by him to said Stanley belonged to the estate of Benjamin C. Pearce, deceased; that the money received by him for the assignment of said mortgage was wasted and not accounted for by him or by his administrator since his death; that Laura C. Barroll "knew, or by reasonable inquiry might have known, that the said mortgage and the debt thereby secured belonged to the estate of Benjamin C. Pearce," and that said Wirt had no right or authority to assign the same to her; that there was due on said mortgage the sum of $2,500.00, with interest thereon from the 7th day of December, 1905, and that if the said Thomas L. Stanley had paid any part of the sum secured by said mortgage to Sarah Ellen Barroll, executrix of Laura C. Barroll, said trustee was entitled to have the same paid to him by said executrix, and upon her failure to do so he was entitled to recover said sum from Thomas L. Stanley.

The bill prays, first, that Thomas L. Stanley and Sarah Ellen Barroll, executrix, be required to answer and "discover and disclose fully and in detail what sums of money have

been paid on account" of said mortgage debt; second, that said executrix of Laura C. Barroll be required to pay to the plaintiff all sums received by her or the said Laura C. Barroll on account of said mortgage debt; third, that the said Isabel R. Steel be required to answer, etc.; fourth, that a decree be passed for the sale of the real estate described in said mortgage or so much thereof as may be necessary for the payment of said mortgage claim; fifth, that the administrator of John S. Wirt be required to file in this cause the original mortgage and any other security he may have for the payment of the mortgage; sixth, that said assignment from John S. Wirt to Laura C. Barroll be declared null and void; seventh, that an injunction be issued against the said Stanley, Sarah Ellen Barroll, executrix, and George R. Ash, administrator, enjoining said Stanley from paying any part of said mortgage to anyone except the plaintiff, enjoining Sarah Ellen Barroll, executrix, from assigning or releasing said mortgage or distributing the estate of her testatrix until the plaintiff's claim has been paid and satisfied, and enjoining said George R. Ash, administrator, from assigning or delivering said mortgage to anyone except the plaintiff, and commanding him to assign the same to the plaintiff, and, eighth, for general relief.

The answer of Thomas L. Stanley denies that the sum of money he borrowed from John S. Wirt, and which was secured by said mortgage, belonged to the estate of Benjamin C. Pearce, and alleges that he did not borrow the same from John S. Wirt as executor; that the loan was made to him and the mortgage was executed prior to the order of the Orphans' Court authorizing said executor to invest the sum of $2,500 in a mortgage upon his property, and that he had no knowledge of said order; that he paid John S. Wirt $500.00 on account of the principal of the mortgage debt and the interest due thereon prior to the assignment of the same to Laura C. Barroll and that he paid the balance of said mortgage to Sarah Ellen Barroll, executrix, with no intention of defrauding anyone interested in said mortgage. The answer of

Sarah Ellen Barroll, executrix, also denies that the sum of money originally secured by said mortgage belonged to the estate of Benjamin C. Pearce, and alleges that Laura C. Barroll took the assignment of said mortgage believing that the same belonged to John S. Wirt; that said Wirt represented to Laura C. Barroll that the mortgage belonged to him; that relying upon said representation and the mortgage record she paid to him the sum of $2,000.00, the balance then due on said mortgage, and that he thereupon delivered to her what he represented and what she believed to be the original mortgage and assignment thereof, and that she had "no notice or knowledge of any character whatever that said mortgage debt belonged, or was claimed to belong, to the estate of Benjamin C. Pearce." The answer of Isabel R. Steel alleges that she took said mortgage for $3,000.00 believing that the mortgage assigned to Laura C. Barroll was the only lien against the real estate of Thomas L. Stanley, and that in making said investment she acted in good faith, relying upon the record title of the said Stanley, and without any notice, either actual or constructive, of the plaintiff's claim.

In addition to the facts we have already stated, the evidence shows that Laura C. Barroll, at the time of the assignment of the mortgage to her, was about seventy years of age; that she had entire confidence in Mr. Wirt, trusted him as her friend and attorney and consulted him in all matters of business. There is not the slightest evidence in the case to show that she knew that the debt secured by the mortgage belonged to the estate of Benjamin C. Pearce, or that she knew of the assignment of the mortgage to John S. Wirt as executor. On the contrary, all the evidence having any bearing upon her knowledge of the title to said mortgage is to the effect that he represented and that she believed that the mortgage belonged to him, and that the copy of the mortgage which he sent her was the original mortgage.

The appellant bases his claim to the relief sought and to a reversal of the decree of the Court below dismissing the bill

upon three grounds, viz: first, that the assignment of January 2nd, 1896, transferred the title to the mortgage and mortgage debt to John S. Wirt, executor of Benjamin C. Pearce, and that at the date of the assignment to Laura C. Barroll, John S. Wirt had no title to or interest in said mortgage; second, that the Code does not authorize the assignment of a mortgage by writing the assignment upon the mortgage record, and that the assignment to Laura C. Barroll was therefore a "nullity," and third, "that the absence of the original mortgage, the fact that the debt was overdue and the further fact that she was paying $2,000.00 for a mortgage purporting to be for $2,500.00 were facts that put her on notice and had she followed them out, as it was her duty to do, she would have ascertained from the original mortgage, had she demanded its production, that it had been assigned to the Pearce Estate," etc.

Section 116 of the Acts of 1856, Ch. 154 (Art. 21, sec. 34, Code of 1912), provides: "An assignment of a mortgage may be made in the following form or to the like effect: 'I hereby assign the within mortgage to the assignee. Witness my hand and seal this ——— day of ———. (Seal).' "

Section 117 of the same Act (sec. 35 of Art. 21 of the Code of 1912) declares that "Every assignment made in the above form, or the same in substance, endorsed upon the original mortgage, shall be construed and deemed sufficient to convey to the assignee every right which the assignor possessed under said mortgage at the time of the assignment thereof," etc. By the Act of 1868, Ch. 373, sec. 116, was amended by adding thereto the following provision: "And such assignment shall be recorded on the record in the office of the clerk of the Court where the original mortgage is recorded, and at or near the foot of the said mortgage, in a blank to be left by the clerk who shall record such mortgage."

In the case of *Byles* v. *Tome,* 39 Md. 461, the Court, construing these acts, said: "The Act of 1856, Ch. 154, entitled 'An Act to simplify and abridge the rules and forms of

conveyances', provided a short and simple form for the assignment of mortgages, and the 117th section further provided that an assignment thus made and endorsed upon the original mortgage 'should be sufficient to convey to the *assignee* every right which the assignor possessed under said mortgage at the time of the assignment, in as full and complete a manner as *any* instrument of writing whatever could do.' No provision was made for the recording of assignments thus made. The Act of 1868, however, provided that such assignment should be recorded, thus putting the assignment of the title of mortgages upon the same footing as other conveyances and making the recording thereof constructive notice to all persons. It was not the purpose of the Act in question to effect in any manner the equitable assignment of mortgages by the mere assignment of the mortgage debt, nor to impair the rights of assignees thereunder." In the case of *West. Md. R. R. Co.* v. *Goodwin,* 77 Md. 271, where the mortgage and note secured thereby were assigned and delivered to the assignee, the Court held that it was not necessary to record the assignment of the mortgage in order to perfect the assignee's title to the mortgage lien as against a subsequent assignee claiming under a recorded assignment, and the same principle was applied in the case of *Demuth* v. *Old Town Bank,* 85 Md. 315, where the Court said: "The transfer or indorsement of the note, which is the principal, carries the mortgage, which is the incident, and effectually clothes the *bona fide* holder of the note with the lien of the mortgage itself."

As the law stood prior to the Act of 1892, Ch. 392 (Art. 66, sec. 25 of the Code of 1904), it cannot, therefore, be doubted that the assignment of January 2nd, 1896, would have vested in the executor of Benjamin C. Pearce a good title to the mortgage debt and a lien as against any subsequent assignee of the mortgage. But that Act, which was in force at the time the mortgage and assignments referred to in this case were executed, made a radical change in the law. It provided that "The title to all promissory notes, other

instruments hereafter made and debts hereafter contracted, secured by mortgages or deeds in the nature of a mortgage shall from and after the maturity of such notes, other instruments or debts be conclusively presumed to be vested in the person, persons, or body corporate holding the record title to such mortgage or deed in the nature of a mortgage," etc., and by an amendment the Act is made to apply before as well as after the maturity of the mortgage debt, Sec. 25, Art. 66, Code of 1912. As by the terms of the Act the title to the debt secured by the mortgage is *conclusively* presumed to be in the person holding the record title to the mortgage, in order to perfect the title of an assignee of a mortgage debt as against a subsequent assignee it is now necessary to have an assignment of the mortgage recorded, and the title of a *bona fide* assignee of the person holding the record title to a mortgage is no longer affected by prior unrecorded assignments. In the case of *Dickey* v. *Pocomoke City Bank,* 89 Md. 280, JUDGE BOYD, referring to the Act of 1892, said: "That statute made a complete change of the law on the subject in this State. Prior to its passage the mortgage followed the debt secured by it, and became the property of the owner of the latter, but since then the debt, after maturity, follows the mortgage and is conclusively presumed to belong to the person holding the record title to the mortgage."

The appellant contends, however, that the fact that John S. Wirt did not send to Laura C. Barroll the original mortgage was sufficient notice to her of the prior assignment. But the evidence shows that she was not present when the assignment was made; that he invested the money for her, made the assignment, and sent her a copy of the mortgage; that she trusted him implicitly and accepted the copy of the mortgage which he sent her believing it to be the original mortgage. Moreover, even if she had discovered that the mortgage was a copy instead of the original, and that fact had awakened a suspicion in her mind, if, as the plaintiff contends, Mr. Wirt was engaged in perpetrating a fraud

upon the Pearce estate, it is not probable that any inquiry or an appeal to him would have resulted in a disclosure of the assignment of 1896, and if she had examined the mortgage records she would have found that he held the record title to the mortgage. Under the Act of 1892, that title carried with it the presumption that the mortgage debt belonged to him, and she cannot, under such circumstances, be charged with notice of the prior assignment of the mortgage.

The second and remaining ground upon which the appellant relies we think equally untenable. While the Code does not expressly provide that the assignment referred to in sec. 34, Art. 21, may be written on the mortgage record, it does declare that an assignment of a mortgage may be made in the form prescribed, and many instances may be found, in at least some of the counties of this State, where such assignments have been made, and we have never known their validity to be questioned. Since the Act of 1892, making the record title to the mortgage conclusive evidence of the title to the mortgage debt, there is still less reason for holding such assignments insufficient. But even if the assignment to Miss Barroll was defective because it was written on the mortgage record instead of being indorsed on the original mortgage, it was at least a good equitable assignment, and having been made, for a valuable consideration, by the person holding the record title to the mortgage, and accepted in good faith, without notice or knowledge of the appellant's claim, it was not affected by the prior unrecorded assignment. It was written, signed and sealed by the assignor, with the intention of thereby transferring the title to the mortgage and mortgage debt to Laura C. Barroll in consideration of the sum of $2,000.00, and a certified copy of the mortgage and assignment was delivered to her. In the case of *Aldridge v. Weems et al.,* 2 G. & J. 36, where the assignment was made on the mortgage but was never delivered, the Court said: "A Court of equity has the power and will make every possible effort, within the range allowed by the Statute of

Fraud, to heal the infirmities of defective contracts of every description, that can be sanctioned by the law. This assignment has all the forms and solemnities necessary to constitute a good contract. It is in the hand writing of Tongue, and signed by him, and is a full expression of his intention to transfer his interest in the mortgage, to Aldridge and Higdon. * * * It was the moral duty of Tongue to secure the debt due to Aldridge and Higdon. It was his express agreement to do so. He has made a solemn instrument in his own handwriting, and signed by him to produce that effect, and this instrument remains in his possession, uncancelled, until the day of his death; yet it is said you are to presume this was all idle and nugatory, and that too, in a Court of Equity, whose peculiar province and pleasure it is to heal defective contracts, and carry the intention of parties into effect. This doctrine would prevert the equitable powers of a Court of Chancery." In the case of *Dickey* v. *Pocomoke Bank, Supra,* the Court held that "a written assignment was not necessary, but the mere delivery of a bond and mortgage as security is a valid pledge and will be so treated in a Court of equity."

It follows from what we have said that Laura C. Barroll acquired a good title to the mortgage by the assignment of November 19th, 1900, and that her executrix was entitled to receive from Thomas L. Stanley the balance due thereon, and it is unnecessary to refer to other features of the case which do not affect the conclusion we have reached.

*Decree affirmed, with costs.*